UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DENNIS M. BROWN**                                                                 **CIVIL ACTION**

**VERSUS**                                                                                  **NO. 15-1491-DEK**

**SHERIFF MARLIN GUSMAN, ET AL.**

ORDER AND REASONS

Plaintiff, Dennis M. Brown, filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. He sued Orleans Parish Sheriff Marlin Gusman, Lieutenant W. Holmes, and Deputies D. Adams, K. Tapp, and T. Young. In this lawsuit, plaintiff claims that Deputy Adams used excessive force when she sprayed him with Mace.

The defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56.[1] Plaintiff has not opposed that motion.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings

---

[1] Rec. Doc. 16.

and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In this lawsuit, plaintiff states his claims as follows:

> On 4·11·15 Lt. W. Holmes was supervisor when incident occurred.  On 4·11·15 Deputy Tapp and nurse come to A1#13 to stick my finger for my diabetes when I informed him I needed to see Lt. Holmes – Deputy Adams who was assigned to A2 female tier abused her authority by coming on A1 trying to force me in my cell and I ask her to get her hands off me because I request to see rank! Deputy Adams stated fuck you lockdown or I'll mace you.  I told her do as you please I wanna see rank – Deputy Adams then mace me with the whole can in my face and state bitch I am rank now catch your cell. Lt. Holmes come on A1 when he was informed by Deputy Tapp and inmates what happen with Deputy Adams over abusing her authority – EXCESSIVE USE of Force was not needed because I didn't pose a threat and Deputy Tapp was in control of the matter and Deputy Adams violated my constitutional rights.[2]

Defense counsel subsequently took plaintiff's deposition.  At the deposition, plaintiff provided the following more detailed version of the events on which his claims are based:

> Q.    Now, we're going to go over your complaint.  Now might be a good time for you to give me your whole version of events like I said I was going to let you do.  Give it to me from the very beginning with everything you say happened and why you say it happened.  Give me your version.

---

[2] Rec. Doc. 5, pp. 4-5.

A.     All right. I'm a diabetic. So I had been complaining for about two hours trying to see medical because my sugar was down.

Q.     How did you know your sugar was down?

A.     Because I went to feeling light-headed. I kept going in and out. I kept getting people to go tell the deputy I need to see the nurse. So I wasn't get no response. So Deputy Tapp and Nurse Rattray made rounds. So I knew they got to open my door because they got to give me medication.

So once my cell door was open, just Deputy Tapp and Deputy Rattray was on the tier. So I explained to Deputy Tapp, I said I don't have no problem or nothing with you, but I need to see the rank. I'm not locking down. Deputy Tapp said okay, cool, let me finish my med pass. So he finished passing the medication to the rest of the inmates on the tier. I was standing by the monitor, by the booth.

So all of a sudden, Deputy Adams pops up out of nowhere while Deputy Tapp and Nurse Rattray still on the tier. So she at the door cursing, talking crazy. I say I ain't worried about you. I ain't locking down until I see the rank.

Q.     When you say she's at the door talking crazy and cursing, she just came in on the tier cursing?

A.     Yes. She came on the tier talking about you going to catch your fucking cell. You going in your cell. I say no, I'm not. So Deputy Tapp who is the officer present at the whole time just was standing there looking.

So when I say I'm not going to my cell, I'm waiting on the rank. Call the rank. I want to see the rank. I got a problem. She say you going to your cell. You ain't seeing no fucking rank. I say no, I ain't. So she tried to grab me and nudge me. I say go ahead. I ain't moving.

So when I told her I ain't moving, she say I'm giving you a direct order. She snatched the Mace off her side. I said I'm not moving. Now you want to spray that Mace, go ahead, spray it. She say I'm telling you catch your cell. I say I ain't catching it. She sprayed the Mace.[3]

The defendants argue that plaintiff's allegations, even if true, do not state an actionable excessive force claim. For the following reasons, it is clear that the defendants are correct.

Plaintiff was a pretrial detainee at the time of the incident.[4] His excessive force claim therefore "lies under the Fourteenth Amendment." Benoit v. Bordelon, 596 Fed. App'x 264, 267 n.2 (5th Cir. 2015). In this Circuit, it has long been the rule that excessive force claims brought

---

[3] Rec. Doc. 16-4, pp. 2-4.
[4] Rec. Doc. 5, p. 3.

pursuant to the Fourteenth Amendment by pretrial detainees are to be considered using same analysis as employed when considering excessive force claims brought pursuant to the Eighth Amendment by convicted prisoners. Valencia v. Wiggins, 981 F.2d 1440, 1446-47 (5th Cir. 1993). The United States Fifth Circuit Court of Appeals reasoned:

> [I]t is impractical to draw a line between convicted prisoners and pretrial detainees for the purpose of maintaining jail security. …
> Therefore, when a court is called upon to examine the amount of force used on a pretrial detainees for the purpose of institutional security, the appropriate analysis is that announced in Whitley [v. Albers, 475 U.S. 312 (1986)] and Hudson [v. McMillian, 503 U.S. 1 (1992)]:  whether the measure taken inflicted unnecessary and wanton pain and suffering depends on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.

Valencia, 981 F.2d at 1446 (footnotes and internal quotation marks omitted); accord Kitchen v. Dallas County, Texas, 759 F.3d 468, 477 (5th Cir. 2014).  As part of that analysis, courts were to consider the following factors:

1. the extent of the injury suffered;

2. the need for the application of force;

3. the relationship between the need and the amount of force used;

4. the threat reasonably perceived by the responsible officials; and

5. any efforts made to temper the severity of a forceful response.

Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

However, earlier this year, the United States Supreme Court clarified the law concerning excessive force claims brought pursuant to Fourteenth Amendment.  The Supreme Court concluded that with respect to a Fourteenth Amendment excessive force claim, a pretrial detainee need show only that the use of force was "*objectively* unreasonable." Kingsley v. Hendrickson,

135 S. Ct. 2466, 2470 (2015).  In doing so, the Supreme Court expressly rejected a *subjective* standard, explaining:

> Respondents believe that the relevant legal standard should be subjective, *i.e.*, that the plaintiff must prove that the use of force was not "applied in a good-faith effort to maintain or restore discipline" but, rather, was applied "maliciously and sadistically to cause harm."  Brief for Respondents 27.  And they refer to several cases that they believe support their position. See *id*., at 26-31 (citing Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); [County of Sacramento v.] Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 [1997]; Johnson v. Glick, 481 F.2d 1028 (C.A.2 1973)).
>   The first two of these cases, however, concern excessive force claims brought by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause, not claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause. Whitley, *supra*, at 320, 106 S.Ct. 1078; Hudson, *supra*, at 6-7, 112 S.Ct. 995.  The language of the two Clauses differs, and the nature of the claims often differs.  And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less "maliciously and sadistically." Ingraham v. Wright, 430 U.S. 651, 671-672, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); Graham [v. Connor, 490 U.S. 386], 395, n. 10, 109 S.Ct. 1865 (1989); see also 4 W. Blackstone, Commentaries *300 ("[I]f the offence be not bailable, or the party cannot find bail, he is to be committed to the county [jail] ... [b]ut ... only for safe custody, and not for punishment").  Thus, there is no need here, as there might be in an Eighth Amendment case, to determine when punishment is unconstitutional.  *Whitley and Hudson are relevant here only insofar as they address the practical importance of taking into account the legitimate safety-related concerns of those who run jails.*

Kingsley, 135 S. Ct. at 2475 (emphasis added).[5]

Westlaw reveals no decision from either the United States Fifth Circuit Court of Appeals or any federal court in Louisiana citing Kingsley, much less discussing its ultimate impact on this

---

[5] The Court observed:

> We acknowledge that our view that an objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment may raise questions about the use of a subjective standard in the context of excessive force claims brought by convicted prisoners. We are not confronted with such a claim, however, so we need not address that issue today.

Kingsley, 135 S. Ct. at 2476.

Circuit's precedents. However, Judge Debra M. Brown of the United States District Court for the Northern District of Mississippi recently concluded:

> In the approximately three weeks since Kingsley was decided, only one court in this circuit has addressed the Supreme Court's Kingsley opinion's impact on a Fourteenth Amendment excessive force claim in the Fifth Circuit. In Clark v. Anderson, a Texas District Court followed the Fifth Circuit rule that Fourteenth and Eighth Amendment claims are analyzed under the same framework, although it allowed that "this holding is called into question by the Supreme Court's recent decision in Kingsley ...." No. 4:15-cv-360, 2015 WL 3960886, at *3, *3 n. 3 (N.D. Tex. June 29, 2015). While Clark stopped short of recognizing that Kingsley overruled the Kitchen and Valencia line of cases, a reading of Kingsley compels such a conclusion.
> 
> Kingsley held that Fourteenth Amendment claims, unlike Eighth Amendment claims, must be decided under an objective standard. 135 S.Ct. at 2473-74. Kitchen and Valencia held that Fourteenth Amendment claims, like Eighth Amendment claims, must be decided under a subjective standard. Kitchen, 759 F.3d at 477. These holdings cannot be squared. Accordingly, this Court follows the Supreme Court's direction and holds that Plaintiff's Fourteenth Amendment claim must be evaluated under an objective standard -- that is, the Court must ask whether, from an objective point of view, [the defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose. Kingsley, 135 S.Ct. at 2473-74.

Thompson v. Beasley, 309 F.R.D. 236, 247 (N.D. Miss. 2015).

Nevertheless, whatever the ultimate impact of Kingsley may be on this Circuit's traditional analysis, one thing is clear: the foregoing Hudson factors still play a role in a court's analysis of a Fourteenth Amendment excessive force claim. This is apparent from the fact that the Kingsley court referenced similar factors to be considered in resolving the objective reasonableness of an action on which a Fourteenth Amendment claim is based:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. See, *e.g.*, Graham, *supra*, at 396, 109 S.Ct. 1865. We do not consider this list to be exclusive. We mention these factors

only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

Kingsley, 135 S. Ct. at 2473.  Therefore, Judge Brown concluded:

> In answering this question [of whether an officer's use of force was excessive in relation to a legitimate, nonpunitive governmental purpose], the Court turns to the Hudson inquiry, which has been used for nearly twenty-five years to determine whether a corrections officer's use of force was "wanton and unnecessary," that is, whether force was excessive.  Hudson, 503 U.S. at 7, 112 S.Ct. 995.  *However, in a departure from the pre-Kingsley jurisprudence, the Court need only ask whether the force was unnecessary -- not whether the use of force was so unnecessary as to show the requisite state of mind to support an Eighth Amendment excessive force claim.*

Thompson, 309 F.R.D. at 247 (emphasis added).

Finding Judge Brown's reasoning persuasive, the undersigned will proceed by analyzing plaintiff's excessive force by considering the Hudson factors.

### Extent of the Injury Suffered

At his deposition, plaintiff testified that his only injury from the altercation with Adams was that the Mace caused his eyes to sting and his skin to burn for approximately twelve hours.[6] However, "[s]hort-term pain alone is insufficient to constitute more than *de minimis* injury for purposes of an excessive force claim."  Martinez v. Nueces County, Texas, Civ. Action No. 2:13-CV-178, 2015 WL 65200, at *11 (S.D. Tex. Jan. 5, 2015); accord Bradshaw v. Unknown Lieutenant, No. 02-10072, 2002 WL 31017404 (5th Cir. Aug. 21, 2002) (finding that inmate's "burning eyes and skin for approximately 24 hours, twitching of his eyes, blurred vision, irritation of his nose and throat, blistering of his skin, rapid heartbeat, mental anguish, shock and fear as a result of the use of mace" was nothing more than a "*de minimis* injury").  Accordingly, the Court finds that plaintiff's injuries, if any, were minor and, therefore, this first factor weighs in the defendants' favor.

---

[6] Rec. Doc. 16-4, pp. 16-17.

Need for the Application of Force

As for the need for the application of force, it is clear that the use of force is permissible in a variety of situations, not only when it is necessary to protect oneself from an imminent physical attack by an inmate. For example, the use of force is also appropriate when necessary to control a "recalcitrant inmate." See, e.g., Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000); Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996). As the United States Seventh Circuit Court of Appeals explained in Soto v. Dickey, 744 F.2d 1260 (7th Cir. 1980):

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who testified on behalf of the plaintiffs, suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.
> Discipline in a maximum security correctional institution no doubt is difficult, but it is essential if the prison is to function and provide for the care, safety and security of the staff and inmates. Services to provide food, clothing, health, medical, cleaning, laundry and all other services would come to end without discipline. Mob rule would take over. There would not, and could not, be any protection for staff or inmates. Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.

Id. at 1267.

In the instant case, by plaintiff's own admissions, he was openly defiant and refused Adams' repeated instructions to enter his cell. Accordingly, the Court finds that this second factor likewise weighs in the defendants' favor.

Relationship between the Need for the Application of Force and the Amount of Force Used

Based on the foregoing finding that some amount of force was needed to restore discipline in this case, the next question which arises is whether the amount of force used bore a reasonable relationship to the need. Here, rather than engaging in forceful physical contact, Deputy Adams

8

used a chemical spray to gain compliance.  It is clear that a limited application of chemical spray "to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force."  Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000) (quoting Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996)); accord Ash v. Global Expertise in Outsourcing, Inc., Civ. Action No. 06-1854, 2007 WL 988923, at *1 (W.D. La. Feb. 14, 2007) ("The use of a chemical agent is a reasonable alternative to a physical confrontation between an inmate and prison guards, for compelling compliance from an inmate who cannot be persuaded to obey an order.") (adopted by Minaldi, J., on April 2, 2007).

   Plaintiff does not suggest, and this Court cannot imagine, what lesser type of force would have been effective in the instant case.  On the contrary, plaintiff admits that he refused to enter his cell voluntarily despite repeated instructions to do so, and he further he admits that he resisted Adams' efforts to physically "nudge" him toward the cell.  For these reasons, the Court finds that use of a chemical agent was appropriate, and, therefore, this third factor also weighs in the defendants' favor.

### Threat Reasonably Perceived by the Responsible Officials

   This Hudson factor is the weakest for the defendants; however, it still clearly does not weigh in plaintiff's favor.  There is no competent summary judgment evidence, such an affidavit from Adams, detailing what threat, if any, she actually perceived.  However, even if Adams did not believe that plaintiff posed any *imminent physical* danger, that, again, is not the only type of threat which must be considered.  Plaintiff was on a tier occupied by other inmates.  Those inmates could have been emboldened to likewise misbehave had plaintiff been allowed to engage in continuous disrespectful and disruptive behavior without adverse consequence.  While a single inmate's flagrant disobedience might pose no immediate threat, it obviously could serve as a

9

catalyst for more widespread misbehavior which could quickly escalate out of control and pose a serious security concern. Therefore, on balance, this fourth factor also weighs in the defendants' favor.

Efforts Made to Temper the Severity of a Forceful Response

As to the final factor, it appears that plaintiff was taken to see the jail nurse immediately after the chemical spraying.[7] Providing medical attention after the administration of a chemical spray is recognized as a means to temper the severity of the force used. See Martin v. Seal, 510 Fed. App'x 309, 313 (5th Cir. 2013). This factor likewise weighs in the defendants' favor.

Accordingly, for the foregoing reasons, the Court finds that all of the Hudson factors weigh in the defendants' favor and, as a result, plaintiff cannot show that Adams' use of Mace was "objectively unreasonable." Therefore, plaintiff's excessive force claim against Deputy Adams must be dismissed. Further, to the extent that plaintiff is additionally claiming that his rights were violated simply because Deputy Adams allegedly failed to follow "proper protocol,"[8] that claim is obviously frivolous and must also be dismissed. "[A] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009).

As to the remaining defendants, it is clear that plaintiff's claims against them must also be dismissed for the following reasons.

With respect to Deputies Tapp and Young, plaintiff made no allegations against those defendants in his complaint. Further, at his deposition, he testified that they did nothing to violate his rights. Specifically, plaintiff testified that that Tapp did "nothing wrong" and was added as a

---

[7] See Rec. Doc. 16-4, pp. 13-14; Rec. Doc. 16-5, p. 3. Although plaintiff disputes who took him to see the nurse, he apparently does not dispute that he was in fact taken to the nurse for examination.
[8] Rec. Doc. 16-4, p. 5.

defendant "only because he was present … [and] familiar with the incident."[9] He similarly testified that Young did nothing wrong.[10] Because Tapp and Young took no action adverse to plaintiff, and because there was no underlying violation in this case in any event, any claims against them must be dismissed.

With respect to Lieutenant Holmes, plaintiff once again made no allegations against Holmes in the complaint. However, at his deposition, plaintiff testified that he sued Holmes because he failed to discipline Adams for allegedly violating "proper protocol."[11] That claim fails because an inmate has no constitutional right to have a guard disciplined or corrected. See Ordaz v. Martin, No. 93-4170, 1993 WL 373830, at *9 (5th Cir. Sept. 15, 1993).

Lastly, plaintiff sued Sheriff Marlin Gusman. However, plaintiff made no allegations against Gusman in the complaint, and, moreover, plaintiff testified at his deposition that Gusman "didn't do nothing as far as do me nothing because he wasn't present."[12] Rather, plaintiff testified that he sued Gusman "[b]ecause he's [the other defendants'] boss. And he's the last say over the jail."[13] Out of an abundance of caution, the Court notes that, if plaintiff is attempting to assert a claim against Gusman for failing to train or supervise the other defendants, that claim necessarily fails because they did not violate plaintiff's constitutional rights for the reasons already explained. See, e.g., Whitley v. Hanna, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."), cert. denied, 134 S. Ct. 1935 (2014); Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-1263, 2014 WL 7139636, at *5 (E.D. La. Dec. 15, 2014);

---

[9] Rec. Doc. 16-4, pp. 6-7.
[10] Rec. Doc. 16-4, p. 8.
[11] Rec. Doc. 16-4, p. 7.
[12] Rec. Doc. 16-4, p. 9.
[13] Rec. Doc. 16-4, p. 9.

Wallack v. Jackson County, Mississippi, Civil Action No. 1:13cv103, 2014 WL 2154202, at *8 (S.D. Miss. May 22, 2014); Kennedy v. City of Shreveport, Civ. Action No. 07-1049, 2008 WL 2437043, at *6 (W.D. La. June 13, 2008). Similarly, if plaintiff is attempting to assert an official-capacity claim against Sheriff Gusman, that claim likewise fails. Again, because there has been no underlying constitutional violation, any official-capacity claim is meritless. See, e.g., Royal v. Spragins, 575 Fed. App'x 300, 305 (5th Cir. 2014); Billizone, 2014 WL 7139636, at *5.

Accordingly,

**IT IS ORDERED** that the defendants' unopposed motion for summary judgment is **GRANTED** and that plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this fifth day of November, 2015.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**